559 F.2d 1326
 15 Fair Empl.Prac.Cas. 1342, 15 Empl. Prac.
Dec. P 7864
Hollie COTTON and Young Herrod, Individually and on behalf
of all others similarly situated, Plaintiffs-Appellees,
v.
Ravon HINTON and Chauncey L. Gardner et al., Plaintiffs-Appellants,
v.
UNITED STATES PIPE & FOUNDRY COMPANY COKE BY-PRODUCTS PLANT
et al., Defendants-Appellees.
 No. 75-1505.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 30, 1977.
 
 Oscar W. Adams, Jr., Birmingham, Ala., for plaintiffs-appellants.
 John J. Coleman, Jr., James P. Alexander, Demetrius C. Newton, Birmingham, Ala., Charles F. Wilson, Tampa, Fla., John C. Falkenberry, Birmingham, Ala., (Rep. United Steelworkers Local 12014), for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before MORGAN and HILL, Circuit Judges, and NOEL,* District Judge.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 The sole issue in this employment discrimination case is whether or not the District Judge clearly abused his discretion in approving a settlement entered into by a plaintiff class of employees. Objectors bring this appeal seeking to overturn the compromise. We affirm.
 
 
 2
 On December 28, 1971, following submission of their claims to the administrative process of the Equal Employment Opportunity Commission (EEOC), two black employees, Hollie Cotton and Young Herrod, filed suit against their employer, United States Iron Pipe and Foundry Company (U.S. Pipe) and against their union, International Union District 50, Local Union 12014 (Union). Seeking to represent a class consisting of the present and former black employees at U.S. Pipe's North Birmingham Complex, the plaintiffs charged the defendant company with violations of 42 U.S.C. § 1981 and of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., stemming from allegedly racially discriminatory employment practices. The defendant Union was charged with violating 29 U.S.C. § 151 et seq., requiring unions to provide fair representation for all of its members. The complaint sought back pay, declaratory and injunctive relief.
 
 
 3
 The Union answered on February 18, 1972, and U.S. Pipe answered on March 15, 1972. Both answers generally denied the allegations in the complaint. On July 3, 1972, a pre-trial conference was held where it became evident that discovery would be necessary and that the litigation commitments of counsel would delay trial of the case. On January 29, 1973, a second pre-trial conference was held in which the Court urged the parties to handle discovery on an informal and cooperative basis. On May 6, 1974, a third pre-trial conference was held in which the Court was informed that a settlement was likely. By September 4, 1974, settlement had not been achieved and U.S. Pipe made an offer of judgment. See F.R.Civ.P., Rule 68. Several conferences between the parties and the Court followed with the result that on October 25, 1974, the Court conditionally approved the consent decree and directed that notice of settlement be given to the class.
 
 
 4
 Thereafter, objections to the settlement were entered by counsel purporting to represent 187 then employed black employees at U.S. Pipe. On December 23 and 27, 1974, hearings were held to consider their objections. Several changes were suggested by the Court. The decree was modified to conform to the Court's suggestions. On January 7, 1975, the objectors filed a motion to be allowed to pursue full discovery and after conference between the parties and objector's counsel, the motion was denied. On January 14, 1975, over six years after the charges of unlawful employment practices were filed with the EEOC, a final judgment was entered from which the objectors appeal.
 
 
 5
 In this case, as indicated above, the Court is called upon to determine whether or not the District Judge, the Honorable Sam C. Pointer, abused his discretion in approving a settlement resolving this private class action. The conclusion we reach is that the trial judge wisely exercised his discretion rather than abused it and we affirm the District Court.
 
 
 6
 From the growing body of decisional law, a number of principles have emerged for the guidance of district judges in making the determination to give or withhold approval of a proposed settlement. We refer to some of them, applicable to this case. Of course, each case must be decided on its own facts. In determining that a compromise is fair, adequate and reasonable and therefore should be approved, the trial judge is essentially called upon to do a balancing task. The application of the principles to which we refer, as well as others, will be dependent upon the facts of each case.
 
 
 7
 In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.[1] Young v. Katz, 447 F.2d 431 (5th Cir. 1971).
 
 
 8
 A threshold requirement is that the trial judge undertake an analysis of the facts and the law relevant to the proposed compromise. A "mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law" will not suffice. Protective Committee v. Anderson, 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968).
 
 
 9
 In addition to undertaking such an analysis, it is essential that the trial judge support his conclusions by memorandum opinion or otherwise in the record. An appellate court, in the event of an appeal, must have a basis for judging the exercise of the trial judge's discretion. Protective Committee v. Anderson, supra.
 
 
 10
 In determining the fairness, adequacy and reasonableness of the proposed compromise, the inquiry should focus upon the terms of the settlement. The settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case. Protective Committee v. Anderson, supra. The relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms. See Norman v. McKee, 431 F.2d 769 (9th Cir. 1970).
 
 
 11
 In Title VII class actions, the District Court is particularly suited to perform this task since the trial judge is given broad discretion in the fashioning of the proper remedial relief to eliminate employment discrimination. See Ablemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).
 
 
 12
 Yet, in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case in the settlement hearings. Young v. Katz, supra.
 
 
 13
 It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.
 
 
 14
 City of Detroit v. Grinnell Corporation, 495 F.2d 448, 456 (2d Cir. 1974), Grunin v. International House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975).
 
 
 15
 Neither should it be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." Milstein v. Werner, 57 F.R.D. 515, 524-25 (S.D.N.Y.1972).
 
 
 16
 In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. Flinn v. FMC Corporation, 528 F.2d 1169 (4th Cir. 1975). Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. Id. at 1173.
 
 
 17
 In addition to examining the merits of a proposed settlement and ascertaining the views of counsel, the Court should consider other factors.
 
 
 18
 Practical considerations may be taken into account. It is often said that litigants should be encouraged to determine their respective rights between themselves. United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826 (5th Cir. 1975) (and cases cited therein). Particularly in class action suits, there is an overriding public interest in favor of settlement. Id.; Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976). It is common knowledge that class action suits have a well deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action. Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2d Cir. 1968).
 
 
 19
 A review of the leading cases from this Circuit involving litigation of employment discrimination in class actions profitably shows the length of time and expense which must be incurred before the dust of combat has finally settled. See, e. g., United States v. United States Steel Corporation, 520 F.2d 1043 (5th Cir. 1975); Pettway v. American Cast Iron Pipe Company, 494 F.2d 211 (5th Cir. 1974). In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.
 
 
 20
 In a Title VII case, as here, the policy favoring settlement is even stronger in view of the emphasis placed upon voluntary conciliation by the Act itself. United States v. Allegheny-Ludlum Industries, Inc., supra; Patterson v. Newspaper & Mail Del. U. of N. Y. & Vic., 514 F.2d 767 (2d Cir. 1975).
 
 
 21
 "While the public objectives embodied in Title VII warrant a careful review of the provisions of the settlement in light of these policies, . . ., the clear policy in favor of encouraging settlements must also be taken into account, . . ., particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals." Patterson, supra at 771 (citations omitted).
 
 
 22
 When, during the course of the litigation, it becomes known to the Court that a portion of the class objects to the proposed settlement, the trial judge must assume additional responsibilities. The trial court must extend to the objectors leave to be heard. See, Mandujano v. Basic Vegetable Products, Inc., 541 F.2d 832 (9th Cir. 1976). However, this is not to say that the trial judge is required to open to question and debate every provision of the proposed compromise.
 
 
 23
 The growing rule is that the trial court may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision. See, Flinn v. FMC Corporation, supra; City of Detroit v. Grinnell Corporation, supra.
 
 
 24
 The Court should examine the settlement in light of the objections raised and set forth on the record a reasoned response to the objections including findings of fact and conclusions of law necessary to support the response. Mandujano v. Basic Vegetable Products, Inc., supra.
 
 
 25
 In assessing the fairness of the proposed compromise, the number of objectors is a factor to be considered but is not controlling. Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799 (3d Cir. 1974). A settlement can be fair notwithstanding a large number of class members who oppose it. Id.
 
 
 26
 The trial judge must then make a determination as to whether or not to approve the settlement, or he may make suggestions to the parties for modifications of the proposal. Approval must then be given or withheld.
 
 
 27
 In the instant case, the trial judge fulfilled his responsibilities in determining that the settlement was fair, adequate, and reasonable. His opinion shows that he carefully analyzed the facts of the case in relation to the relevant principles of applicable law we have delineated.
 
 
 28
 (18, 19) Our duty is to ascertain whether nor not the trial judge clearly abused his discretion in approving the settlement. Allegheny-Ludlum Industries, Inc., supra; Young v. Katz, supra. We must consider the effect of the settlement as a whole. We are not free to delete, modify or substitute certain provisions of the settlement. The settlement must stand or fall as a whole. Allegheny-Ludlum Industries, Inc., supra; Patterson v. Stovall, 528 F.2d 108 (7th Cir. 1976).
 
 
 29
 On appeal, the objectors present the same objections to us as were presented to and rejected by the trial judge. Their objections, they contend, establish that the trial judge abused his discretion.
 
 
 30
 The objectors' primary contention is that too little discovery was conducted in this case. They assert that the plaintiffs lacked sufficient information intelligently to determine to agree to the compromise. They assert that the district judge lacked sufficient information to assess the fairness and adequacy of the compromise. Lastly, they assert that they themselves were without sufficient information to determine what objections, if any, they might have to the compromise. After careful consideration and reflection, we have concluded that their objection lacks merit.
 
 
 31
 It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.
 
 
 32
 At the outset, we consider this an appropriate occasion to express our concern over the common belief held by many litigators that a great amount of formal discovery must be conducted in every case. Often has this Court reviewed records of cases which attest to this commonly held fallacy. We have often seen cases which were "over discovered." In addition to wasting the time of this Court, the parties and their attorneys, it often adds unnecessarily to the financial burden of litigation and may often serve as a vehicle to harass a party. Discovery in its most efficient utilization should be totally extra-judicial. The Court should rarely be required to intervene. Being an extra judicial process, informality in the discovery of information is desired. It is too often forgotten that a conference with or telephone call to opposing counsel may often achieve the results sought by formal discovery.
 
 
 33
 In the instant case, Judge Pointer specifically requested the plaintiffs and defendants to conduct discovery on an informal basis. Counsel proceeded to do just that. The attorneys for plaintiffs and defendants indicated to the trial judge that they had achieved the desired quantum of information necessary to achieve a settlement. The Court was informed of the results of their discovery in several conferences.
 
 
 34
 Counsel for the nonobjecting parties are experienced in the employment discrimination area.[2] They, along with the trial judge, considered this to be a Title VII case remarkably similar to others they had previously encountered. The parties also had for their use an extensive set of interrogatories directed to U.S. Pipe from the EEOC in another case.
 
 
 35
 It likewise appears from the record and actions of the trial court that counsel for the objectors were not groping in the darkness as they assert in this Court. They, also, are experienced counsel.[3] They purported to represent a class comprised of almost 50 percent of the active employees at U.S. Pipe. Their clients had widespread knowledge of the past employment practices at U.S. Pipe which they considered objectionable. Indeed the objectors were able to articulate their objections to the trial judge with such vigor that the trial court sought and obtained modifications of the settlement in their favor. Also, in this case, the focus of all concerned was not so much on alleged past discriminatory practices as it was with the forging of a decree which would insure that black employees expeditiously obtained their "rightful place" in the employment scheme at U.S. Pipe. A review of the consent decree, attached as an Appendix hereto, compels the conclusion that such was successfully achieved.
 
 
 36
 The scope of the discovery to be conducted in each case rests with the sound discretion of the trial judge. Burns v. Thiokol Chemical Corporation, 483 F.2d 300 (5th Cir. 1973). We perceive no abuse of discretion in these circumstances. Of course, as the decree provides, full discovery will be available with respect to the establishment of any class members' back pay claim.
 
 
 37
 The remaining objections raised on this appeal center upon the seniority provisions of the decree and upon the back pay remedy contained within the decree. We find objector's contentions to be meritless.
 
 
 38
 As a result of the compromise, a plant-age, plant-wide seniority system was substituted in place of the previous departmental seniority system. No one challenges these measures. The objectors do, however, challenge certain exceptions to the plant-age, plant-wide seniority system.
 
 
 39
 As a review of the consent decree indicates, a number of jobs are classified as "critical jobs." In order to be eligible to bid on a "critical job," an employee must have previously held a specified "prerequisite job." The objectors assert that the prerequisite jobs are now predominantly filled by whites who have less seniority under the terms of the compromise and that these junior whites will advance to "critical jobs" ahead of more senior blacks. The objectors further contend that the requirement of holding a "prerequisite job" prior to promotion to a "critical job" is a new requirement at the complex and is merely a cloak for the perpetuation of racial discrimination in the obtainment of higher-paying jobs.
 
 
 40
 Judge Pointer was previously presented with this contention and rejected it for a number of reasons. While he found that the prerequisite job requirement had not been formerly required per se, he found that in actual practice "with only rare exceptions the people holding critical jobs had previously held the jobs being listed as a prerequisite." He found that the critical jobs necessitated special treatment in light of the higher responsibility required for the performance of such jobs. He likewise found that, in reality, 109 of the 183 employees holding prerequisite jobs were black and that if some blacks were indeed disadvantaged this would have been allowable even after a successful trial since the prerequisite job system was similar to the clearly allowable and frequently utilized "line of promotion" scheme. We agree.
 
 
 41
 The second exception to the plant-wide, plant-age bidding system concerns vacancies in the trade and craft positions. Subject to exceptions specified in the decree in favor of blacks, the settlement requires that an apprenticeship must have been completed. We find the apprenticeship period to serve a reasonable business purpose. As Judge Pointer recognized, there is no such thing as an "Instant Electrician." See United States v. Jacksonville Terminal Company, 451 F.2d 418 (5th Cir. 1971).
 
 
 42
 The last objection challenges the method for determining whether an employee is entitled to the equitable relief of back pay. The objectors assert that they are bound to present their back pay claims in the manner provided in the decree since the class is a Rule 23(b)(2) class. Objectors assert that there is no opting out of a (b)(2) class. See United States v. United States Steel Corporation, supra at 1057; La Chapelle v. Owens-Illinois, Inc.,513 F.2d 286, 288 n.7 (5th Cir. 1975). But cf. Pettway, supra at 263 n.154. This contention is meritless. Here we are not considering a proposed opting out of a class action which goes to trial. In the case sub judice, the consent decree itself provides for opting out and we find nothing objectionable in that agreement between the parties.
 
 
 43
 The objectors assert that the requirement of the decree "that the black employee . . . had expressed some interest in the (vacant) position by bid or otherwise " places too heavy a burden on blacks who were deterred from formally bidding on vacant jobs since allegedly such bidding would have been a useless act and one which might have caused retaliation. The objectors seem to have resigned themselves to a very restrictive reading of the words "otherwise." Objectors' attention is called to the recent Supreme Court decision in Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). They are free to urge such a position in the ascertainment of their clients' entitlement to back pay.
 
 
 44
 The objection that the compromise must fall for lack of a specified sum for the settlement of back pay claims and because it does not insure that each class member will receive some back pay is also meritless. As we stated so recently in Gamble v. Birmingham Southern Railroad Co., 514 F.2d 678, 686 (5th Cir. 1975); "(t)he Act does not require a remedy for those not discriminated against." Here, a fund of an unlimited amount has been created by agreement of the parties to insure that any class member who has been discriminated against will be made whole.
 
 
 45
 In conclusion, we are convinced, as was the trial judge, that the settlement was proper and constructive, amounting to a fair, adequate, and reasonable compromise. Neither side received all which it desired. Such is the nature of a compromise. We find that the trial judge exercised his discretion with care and without abuse. The decision from which this appeal is taken is
 
 
 46
 AFFIRMED.
 
 CONSENT DECREE
 
 47
 This action, having been commenced in this Court against United States Pipe & Foundry Company ("U.S. Pipe"), the United Steelworkers of America, AFL-CIO-CLC, and its Local Union No. 12014 (the "unions") on December 28, 1971, and plaintiffs and defendants having appeared by their counsel and having severally consented to the entry of this final Consent Decree and Judgment without trial or adjudication of any issue of fact or law herein, and without this final Consent Decree and Judgment constituting evidence of an admission by any party hereto with respect to any issue;
 
 
 48
 Now therefore, before the taking of any testimony, without trial or adjudication of any issue of fact or law herein and upon the consent of plaintiffs and defendants, it is hereby ORDERED, ADJUDGED and DECREED as follows:
 
 
 49
 I. Jurisdiction. The Court has jurisdiction of the parties and of the subject matter of this action. The complaint states a claim upon which relief may be granted against U.S. Pipe and the unions under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. and 42 U.S.C. § 1981.
 
 
 50
 II. Collective Bargaining Agreement. The Collective Bargaining Agreement now in effect and all subsequent collective bargaining agreements shall remain in, and continue to have, full force and effect except insofar as such agreements are inconsistent with the provisions of this Consent Decree which are necessary to correct those parts of the existing seniority system which may have been discriminatory in their impact. Should a conflict arise between the provisions of the collective bargaining agreement and the provisions of the Consent Decree which relates to those parts of the seniority system, the terms of the Consent Decree shall prevail.
 
 
 51
 III. Class Provisions. For purposes of the Consent Decree, the class under F.R.Civ.P. Rule 23(b)(2) is defined as follows:
 
 
 52
 All black employees at the North Birmingham Complex who are presently employed, or who have been employed at any period of time since July 2, 1965.
 
 
 53
 For purposes of back pay, an appropriate subclass of those black employees or former employees who may show entitlement will be defined in terms of those employees who may meet the standards for back pay set out herein.
 
 
 54
 IV. Facilities. Although all employee facilities maintained and provided by U.S. Pipe and available for use by its employees have been made available to such employees without regard to race at least since 1966, plaintiffs have averred that a number of private facilities have been constructed by employees. U.S. Pipe is hereby permanently enjoined from permitting such facilities to be constructed or maintained. Upon report of such facilities, U.S. Pipe shall have a period of ten (10) days from the date of the report to remove such facilities and impose appropriate discipline upon any employee who is identified as having constructed, or causing to have constructed, maintained or utilized facilities not provided by U.S. Pipe on its premises.
 
 
 55
 V. Seniority. (a) Defendants are hereby enjoined and restrained from applying the system of departmental seniority prescribed by Article II of the Collective Bargaining Agreement effective July 1, 1974, or like provisions of any subsequent collective bargaining agreement for the purposes of determining who among employees otherwise eligible shall be promoted, transferred, demoted or laid off, or for any other purpose for which departmental seniority is a factor.
 
 
 56
 (b) Defendants are further enjoined and restrained from failing or refusing to implement in place of the departmental seniority system a system of plant-wide seniority having the following features:
 
 
 57
 1. Vacancies in bid jobs, which are posted under the collective bargaining agreement, shall be posted at all employee bulletin boards throughout the North Birmingham Complex. Any employee in any plant within the Complex may bid upon any bid job, and if selected, on the basis of his qualifications and seniority, will carry his accumulated complex-wide seniority to the position he filled for purposes of bidding, promotion, layoff and recall. Certain jobs ("prerequisite qualification jobs") require qualifying experience set out below in paragraph V. (b)3.
 
 
 58
 2. With respect to bid jobs, U.S. Pipe shall be entitled to consider, in assessing the qualifications of bidders, relevant experience which a bidder may have obtained in his present job which may relate to functions in the job for which he is applying. Such relevant experience may be obtained within an employee's present department, plant or elsewhere.
 
 
 59
 3. The prerequisite qualification jobs, necessary prerequisite jobs and qualifying tenure are as follows:
 
 
 60
 Prerequisite Qualifying
Critical Job Experience Tenure
--------------------------- ----------------------------- -------------------
 1. All skilled crafts Apprentice Program or Completion of
 Journeyman status apprenticeship
 program at U.S.
 Pipe
 2. Stove Tender Furnace Keeper, Fall
 Man, Laborer 1 Year
 3. Boiler House
 Operator Water Tender 8-14 Months
 4. Power House Assistant Power
 Operator House Operator 3 Years
 5. Locomotive Engineer Locomotive Fireman 8-12 Months
 6. Crane Engineer Crane Fireman 6 Months to 2 Years
 7. Head Switchman Rear Switchman 6 Months to 1 Year
 8. Flueman Pusher Engineer 1 Year
 9. Mud Gun Man Mud Gun Helper 3 Months
10. Pusher Engineer General Experience
 in Coke Oven Department 6 Months
11. Head Charger Charger 6 Months
12. Coke Screen Operator Coke Car Dropper 6 Months to 1 Year
13. Coal Dump Operator Coal Car Dropper 1 Year
14. Lineman Lineman Helper 3-4 Years
15. Apparatus Man No. 2 Pump House Operator 1 Year
16. Light Oil Operator Assistant Light Oil
 Operator 1 Year
17. AC and No. 1 Pump
 House Operator No. 2 Pump House Operator 1 Year
18. Chemical Operator A TSA Helper 2 Months
19. DDS Operator DDS Helper 1 Month
20. TSA Operator
 (Sulfonation Operator) TSA Helper 3 Months
21. By-Product Engineer General overall
 By-Product Plant experience
 in either the No. 1 or No.
 2 Pump House Operator or
 Apparatus Man Classifications 3 Years
 
 
 61
 In order to be eligible for a prerequisite qualification job, a bidder must have had the identified prerequisite experience. The requirement of prerequisite experience may be waived by U.S. Pipe, if, in its opinion, the employee is otherwise qualified due to having other related experience. Provided, however, that in the event a black employee and a white employee are competing for the same vacancy in any critical job, U.S. Pipe may not waive the requirement of prerequisite experience to favor the white candidate over the black candidate.
 
 
 62
 4. Any employee who has completed the maximum specified qualifying tenure in a prerequisite qualification job, as set out in Paragraph No. 3 above, shall be presumed to be qualified for the related critical job, subject to the successful completion of the 30 working-day qualifying period in Paragraph No. 6 below. The fact that the employee has not completed the full tenure specified does not create an inference that the employee is not qualified for the related critical job.
 
 
 63
 5. Any employee, who bids upon any job (including any prerequisite qualification job) not identified herein as "critical", and who has completed not less than six months in any job or jobs in the same department as the job on which he is bidding, shall be presumed to be qualified, subject to the successful completion of the 30 working-day qualifying period in Paragraph No. 6 below. Provided, however, that the failure of a bidding employee to have experience in the department does not create an inference that the employee is unqualified for the position upon which he is bidding.
 
 
 64
 6. Every successful bidder is entitled to a qualifying period on the job into which he has bid that shall not exceed a period of 30 working days during which the successful bidder must demonstrate that he can satisfactorily perform the new job. In the event it is conclusively demonstrated that the successful bidder in unable to perform the job prior to or at the expiration of the 30 working-day period, U.S. Pipe shall have the right to disqualify the employee and return him to the job which he occupied prior to his bid. In the event a successful bidder is disqualified, and he elects to contest his disqualification, he may do so through the grievance procedure, as set forth in the collective bargaining agreement in effect between defendants.
 
 
 65
 VI. Craft Helpers. (a) Any employee at the Complex who has, for a period of five or more years, been employed in a journeyman helper's capacity, shall have the right to demonstrate to U.S. Pipe that he has acquired journeyman's qualifications and skills, at such time as there is a posted bid vacancy in the craft in which the employee has five or more years of helper experience. The right to demonstrate craft skills and qualifications for a posted craft vacancy is subject to the following conditions:
 
 
 66
 1. No helper will be awarded a posted journeyman's job in which any employee competing for the journeyman's job has completed a craft apprenticeship program at the Complex. When an eligible helper bids upon a journeyman's position for which a graduate apprentice from U.S. Pipe's North Birmingham Complex is also bidding, U.S. Pipe shall not be required to permit the helper to demonstrate his skills and qualifications.
 
 
 67
 2. Apprentices and helper-apprentices may not bid upon craft positions prior to the completion of the apprenticeship program.
 
 
 68
 3. No helper will be permitted to demonstrate skills and qualifications in a craft other than in the craft in which he has served as a helper.
 
 
 69
 (b) With respect to the helper's demonstration of skills and qualifications, U.S. Pipe is permitted to require that the helper demonstrate his proficiency in the use of all tools, equipment and measuring devices which regularly and routinely are utilized by journeymen in the craft on which the helper is bidding. This demonstration shall be conducted under the supervision of a foreman responsible for that particular craft. It may include the assignment of such unsupervised tasks as a journeyman typically performs without assistance. Additionally, U.S. Pipe shall be entitled to inquire orally with respect to the various safety considerations attendant to the performance of a particular task before instructing the helper to perform such duties.
 
 
 70
 (c) The 30 working-day qualifying period, provided for in Paragraph V(b)6., shall not be available to any helper who is entitled to demonstrate his acquired craft skills and qualifications.
 
 
 71
 VII. Back pay. For back pay purposes, all black employees at the North Birmingham Complex who were assigned or transferred to jobs which were held completely or predominately by black employees prior to the effective date of this Decree constitute an affected subclass.
 
 
 72
 (a) For purposes of defining membership in the affected sub-class entitled to back pay, the following criteria shall be applied:
 
 
 73
 1. Back pay considerations shall be limited to black employees who can show a superior right to a job awarded a non-class member subsequent to May 5, 1966.
 
 
 74
 2. In proving "superior right", such affected black employee must show (i) that a general bid or supervisory vacancy was filled during the relevant period; (ii) that the black employee was qualified for the position at the time the job was filled and had expressed some interest in the position by bid or otherwise; (iii) that the black employee had greater plant seniority than the person who was awarded the position; (iv) that the affected black employee suffered an actual loss in earnings because of the denial of the job; and (v) that the affected black employee was continually available for the job since the job was filled and during the period for which he claims back pay.
 
 
 75
 (b) 1. Plaintiffs and defendant shall agree upon the vacancies for which the affected black employees might have bid during the period from May 1966 to date. It is further understood that this list of vacancies will be limited to those situations where a white employee was awarded the position rather than a more senior ("complex-wide") black employee.
 
 
 76
 2. Members of the affected subclass claiming back pay entitlement shall present each such claim to counsel for the class, who shall, in turn, confer with counsel for defendants. Said counsel shall confer with respect to each individual claim applying the criteria set forth herein. In the event counsel for the parties shall not agree with respect to any claim, the claimant shall have the right to litigate that back pay claim in this action under pendent jurisdiction established by this cause for a period of one year from the effective date of this Decree. Any such claim must be commenced within the one-year period following the effective date of this Decree.
 
 
 77
 3. At the conclusion of the period for the award of back pay entitlement and when that total amount is finally ascertained, the Court shall hold a hearing to determine how that amount shall be assessed, if at all, between U.S. Pipe and the unions. All parties may appear, be heard and present evidence with respect to the allocation of the amount due and owing. All parties shall continue to have full discovery rights for the purpose of resolving back pay entitlement questions.
 
 
 78
 4. U.S. Pipe shall make payment of back pay awards when such awards are agreed upon or as directed by the Court in cases where agreement is not reached. In the event that the defendant unions are held liable for any such award, or any part of any such award, they shall be additionally liable for interest from the date payment is made by U.S. Pipe.
 
 
 79
 (c) As a condition to the receipt of any back pay under the provisions of this Consent Decree, any individual otherwise qualifying for such relief shall execute a release as respects any further liability on the part of defendants regarding any alleged violations of racial discrimination under any employment opportunity laws, ordinances, regulations or orders, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., 42 U.S.C. § 1981, et seq., or any other applicable provision relating to the seniority system and other claims resolved by this Decree.
 
 
 80
 VIII. Apprentice Program. Defendants are hereby enjoined and restrained from applying the "Apprenticeship Rules", Article III of the Collective Bargaining Agreement effective July 1, 1974, or any similar provisions of any subsequent collective bargaining agreement for the purposes of determining eligibility for the apprenticeship program except as is consistent with the following:
 
 
 81
 (a) All employees who, upon completion of the applicable apprenticeship program, can complete fifteen years' service prior to becoming eligible for voluntary retirement, may bid upon openings in the apprenticeship program without regard to their chronological age.
 
 
 82
 (b) The specified apprenticeship period of four years shall be reviewed with respect to each apprenticeship program so that a minimum apprenticeship term is established. Said apprenticeship term shall be sufficient to fully qualify an apprentice for a journeyman's position in whatever craft he has entered. Defendants shall separately report to the Court at a date specified by the Court.
 
 
 83
 IX. Individual Relief. Effective five (5) days after the entry of this Consent Decree, U.S. Pipe shall place Young Herrod in the position of Helper-Apprentice, Machinist. In the event Young Herrod performs his duties satisfactorily, the Helper-Apprentice position will lead to a Journeyman's job in routine progression.
 
 
 84
 X. General Injunctive Relief. The North Birmingham Complex, in conjunction with the Office of Federal Contract Compliance, is developing an affirmative action plan pursuant to Executive Order 11246, and the regulations issued thereunder. Accordingly, and with consent of the plaintiffs, general injunctive relief is not deemed necessary.
 
 
 85
 XI. Attorney's Fees. Defendants and Plaintiffs agree that plaintiffs' class attorney is entitled to receive his fees for his representation herein. The amount of such fees, and the allocation among the defendants, if any, will be determined by the Court upon hearing.
 
 
 86
 XII. Retention of Jurisdiction. (a) This Decree resolves all issues as between plaintiffs, plaintiff class and defendants (except as to those members who exercise their right to opt out) relating to alleged acts of discrimination arising on the grounds of race under Title VII of the Civil Rights Act of 1964, as amended, and under 42 U.S.C. § 1981, occurring prior to the effective date of this Decree, and relating to the seniority system and other matters subject to this Decree.
 
 
 87
 (b) The Court hereby retains jurisdiction of this case for the purpose of issuing additional orders or decrees needed to effectuate compliance with Title VII of the Civil Rights Act of 1964, as amended, or to enforce or clarify the implementation of this Decree or subsequent decrees entered in this case. At any time after five (5) years from the date of entry of this Decree, defendants, or any of them, may move, upon sixty days' notice to counsel for plaintiffs, and upon a showing of compliance with the terms and conditions of this Decree, for its modification or dissolution.
 
 
 88
 It is so ORDERED on this the 14th day of January 1975.
 
 
 
 *
 Senior District Judge for the Southern District of Texas, sitting by designation
 
 
 [1]
 Objectors have candidly disclaimed any allegation that there was any fraud or collusion on the part of the parties or their counsel in arriving at the compromise
 
 
 [2]
 A review of employment discrimination cases in our Court reveals that plaintiffs' attorney Demetrius C. Newton has appeared before us in Gamble v. Birmingham Southern Railroad Co., 514 F.2d 678 (5th Cir. 1975) and United States v. United States Steel Corporation, 520 F.2d 1043 (5th Cir. 1975), on rehearing, 525 F.2d 1214 (5th Cir. 1976). The Union's attorney, John C. Falkenberry has appeared before us in Equal Employment Op. Com'n v. Griffin Wheel Co., 511 F.2d 456 (5th Cir. 1975), on petition for rehearing, 521 F.2d 223 (5th Cir. 1975); Graves v. Kaiser Aluminum and Chemical Co., 528 F.2d 1360 (5th Cir. 1976); Watkins v. Scott Paper Co., 530 F.2d 1159 (5th Cir. 1976); Swint v. Pullman-Standard, 539 F.2d 77 (5th Cir. 1976); Myers v. Gilman Paper Corp., 544 F.2d 837 (5th Cir. 1977) and United States v. Allegheny-Ludlum Industries, 553 F.2d 451 (5th Cir. 1977). U.S. Pipe's attorneys, John J. Coleman, Jr. and James P. Alexander recently appeared before us in United States Steel Corporation v. United Mine Wkrs. of America, 526 F.2d 376 (5th Cir. 1976)
 
 
 [3]
 Objectors lead counsel Oscar W. Adams, has appeared before us in Pettway v. American Cast Iron Pipe Company, 494 F.2d 211 (5th Cir. 1974); United States v. United States Steel Corporation, 520 F.2d 1043 (5th Cir. 1975); on rehearing, 525 F.2d 1214 (5th Cir. 1976); and United States v. Allegheny-Ludlum Industries, 546 F.2d 1249 (5th Cir. 1977)