[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 28, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10235
Non-Argument Calendar

_____

D. C. Docket No. 83-01676-CV-HLM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

JOHN F. KNIGHT, JR.,
ALEASE S. SIMS,

Plaintiffs-Appellees,

GEORGE MUNCHUS,
WILLIE STRAIN, on behalf of themselves
as class members,

Plaintiffs-Appellants,

versus

STATE OF ALABAMA,
ALABAMA A & M UNIVERSITY,
ALABAMA STATE BOARD OF EDUCATION,
AUBURN UNIVERSITY,
BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA,

ALABAMA COMMISSION ON HIGHER EDUCATION,
ALABAMA PUBLIC SCHOOL AND COLLEGE AUTHORITY,
BOB RILEY, Governor,
JIM MAIN, Director of Finance,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

**(March 28, 2008)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

This appeal arises from extended litigation regarding a desegregation lawsuit involving the public universities in Alabama and a plaintiff class of "all black citizens of Alabama and all past, present and future students, faculty, staff and administrators of Alabama State University and Alabama A & M University" ("Knight-Sims plaintiffs"). Munchus and Strain, proceeding pro se on behalf of themselves as class members, appeal the district court's approval of ten settlement agreements ending that litigation.

**Prudential Standing**

The State of Alabama and the State Board of Education Defendants ("SBE

Defendants") argue that Munchus and Strain lack prudential standing under <u>Devlin v. Scardeletti</u>, 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002), because they fail to assert any individual right as class members or any personal stake in the outcome of the class action settlement or appeal.

Non-named class members who object in a timely manner to approval of a settlement in a class action may appeal from the final judgment approving the settlement. <u>Devlin</u>, 536 U.S. at 14, 122 S.Ct. at 2113; <u>AAL High Yield Bond Fund v. Deloitte & Touche LLP</u>, 361 F.3d 1305, 1309 (11th Cir. 2004). "[A]ppeals by nonnamed class members [do not] raise the sorts of concerns that are ordinarily addressed as a matter of prudential standing." <u>Devlin</u>, 536 U.S. at 7, 122 S.Ct. at 2009. As the Supreme Court stated in <u>Devlin</u>:

> Because petitioner is a member of the class bound by the judgment, there is no question that he satisfies [the prudential standing] requirements. The legal rights he seeks to raise are his own, he belongs to a discrete class of interested parties, and his complaint clearly falls within the zone of interests of the requirement that a settlement be fair to all class members. Fed. Rule Civ. Proc. 23(e).

<u>Id.</u>

Munchus and Strain are nonnamed class members who filed timely objections to the settlement agreements. Therefore, they satisfy the prudential standing requirements.

3

**Approval of the Settlement Agreements**

We review for abuse of discretion a district court's approval of a class action settlement agreement. <u>Leverso v. SouthTrust Bank of Ala.</u>, 18 F.3d 1527, 1531 (11th Cir. 1994). Our limited review reflects a strong judicial policy favoring the resolution of disputes through settlement. <u>United States v. City of Miami</u>, 614 F.2d 1322 (5th Cir. 1980). We review for clear error a district court's finding that, under <u>United States v. Fordice</u>, 505 U.S. 717, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992), an education system is no longer in violation of the Constitution and is therefore unitary. <u>NAACP, Jacksonville Branch v. Duval County School</u>, 273 F.3d 960, 966 (11th Cir. 2001).

<u>Legal and Economic Interests of the Class</u>

Munchus and Strain argue that the district court applied an incorrect legal standard in determining whether to approve the settlement agreements, and, in doing so, the district court failed to "fairly and adequately represent the legal and economic interests of the class." They specifically assert that the settlement is unfair and inadequate in two ways: (1) funding for historically black colleges and universities is contingent upon legislative approval; and (2) the court is without jurisdiction to enforce the agreements. They argue that the mediation provisions of the settlement agreements "require[] the class to engage in the legal and economic

4

burden of [enforcing] the settlements."

They further argue that the district court should have applied the six-factor approach in Ayers v. Thompson, 358 F.3d 356 (5th Cir. 2002) (persuasive authority). Munchus and Strain appear to argue that not only is Ayers the proper legal standard, but that the substance of the settlement agreements in this case should include certain key provisions of the settlement agreement in Ayers. They point to the following features of the Ayers settlement agreement: (1) state fund appropriations were approved by the state legislature prior to approval of the settlement; (2) the notice to class members was widely circulated for several months; (3) the fairness hearing extended over three days, during which the court received evidence, rather than relied upon reports; (4) the objectors were allowed an opportunity to participate in the fairness hearing; (5) the district court retained jurisdiction; and (6) the remedial standard was the elimination of vestiges of segregation, not the promotion of diversity. With regard to this last feature, Munchus and Strain argue that "the class is entitled to more than diversity programs and measurements for which defendants will pay no penalty for violations or non-achievement."

Munchus and Strain also argue that "[t]he district court did not give adequate consideration to whether this settlement is a mantle of oppression that

5

unfairly and unreasonably impinges on the rights and interests of the absent class members." They contend that the court-ordered notice to class members—once a week for two weeks in designated newspapers in Alabama—was insufficient to satisfy the legal and economic interest of absent class members. They note that the two weeks notice did not provide absent class members time "to obtain appropriate legal review" of the settlement agreements and that "[t]he fairness hearing was scheduled within one week of the time to file objections."

Federal Rule of Civil Procedure 23(e) requires judicial approval of all class settlements. Fed.R.Civ.P. 23(e)(1)(A). In that approval process, absent class members are afforded both substantive and procedural protections. Holmes v. Continental Can Co., 706 F.2d 1144, 1147 (11th Cir. 1983). A "[d]istrict [c]ourt must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977); see also Fed.R.Civ.P. 23(e)(1)(C). In evaluating settlement proposals, six factors are generally considered: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants,

6

including class counsel, class representative, and the absent class members.  See

Cotton, 559 F.2d at 1330-31.   Accord Ayers v. Thompson, 358 F.3d 356, 369 (5th

Cir. 2004).  Additionally, "individual class members whose interests may be

compromised in the settlement process" are accorded special procedural

protections, including notice.  Holmes, 706 F.2d at 1147; Pettway v. Am. Cast Iron

Pipe Co., 576 F.2d 1157, 1219 (5th Cir. 1978).

*Notice*

As a threshold matter, there is an issue as to whether Munchus and Strain

failed to preserve the issue of notice by not submitting a written objection to the

district court.  See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324,

1331 (11th Cir. 2004) (holding that, generally, we will not consider an issue not

raised in the district court.). In their brief, Munchus and Strain frame the notice

issue as one regarding the legal and economic interests of the class.  Their

objections below do assert that "[t]he proposed settlement agreement does not

fairly and adequately represent the legal and economic interests of the members of

the class."  Construing the objections and brief of Munchus and Strain, who are

proceeding pro se, liberally, Munchus and Strain appear to understand the notice

requirement as part of this broader objection regarding the interests of the class.

See Lorisme v. I.N.S., 129 F.3d 1441, 1444 n.3 (11th Cir. 1997) (noting that we

7

liberally construe pro se briefs). Therefore, they have not failed to preserve the issue for appeal. Regardless, the district court did not abuse its discretion in finding that notice was sufficient, as discussed below.

Rule 23(e) requires that the district court "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed.R.Civ.P. 23(e)(1)(B). We have not determined what constitutes reasonable notice of a proposed settlement agreement under Rule 23(e). Those of our sister circuits that have addressed the issue have required that the notice apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests. See Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 617, 630 (6th Cir. 2007) (persuasive authority) (explaining that notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal quotation marks omitted).

"In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of . . . settlement." DeJulius v. New England Health Care Employees Pension Fund, 429

F.3d 935, 943-44 (10th Cir. 2005) (persuasive authority). Accord Adams v. Southern Farm Bureau Life Ins. Co., 493 F.3d 1276, 1285 (11th Cir. 2007) ("Class actions, as other cases, are subject to the requirements of due process.") (internal quotation marks omitted). In the context of notice for class certification and class member opt-out, we have stated that "it is not only necessary that the notice reach the parties affected but that it convey the required information." Adams, 493 F.3d at 1285-86 (internal quotation marks omitted). Likewise, we have stated that, "[i]n reviewing the class notice to determine whether it satisfies the[] requirements [of due process], we look solely to the language of the notices and the manner of their distribution." Id. at 1286.

The district court did not abuse its discretion in finding that notice was sufficient. The content of the notice apprised the class members that the settlement agreement with the State was available for their review on the websites of the States of Alabama, the Governor, and the Alabama Commission on Higher Education and that the settlement agreement with each of the defendant universities was available on the university's website. It also apprised the class members that they could view the settlement agreements on the plaintiff's website and at the main library of every state university in Alabama. The notice appeared in newspapers in the geographic areas of the universities involved in the suit and in

9

the north, south, east and west of the state. The notice was published in ten newspapers, twice in each, at week intervals. Regarding the amount of time the notice was published prior to the deadline for objections and the fairness hearing, the district court did not abuse its discretion in providing for two weeks' notice before objections were due. Although Munchus and Strain argue that two weeks' notice did not allow class members adequate time to secure counsel for filing objections, Rule 23 and due process only require that class members are provided notice of the terms of a settlement agreement in a manner that allows them to make a determination about whether or not the settlement serves their interests. Nothing in Rule 23(e) or its attendant jurisprudence indicates that hiring counsel is necessary to meet the requirements of Rule 23(e) or due process.

*Fairness, Adequacy, and Reasonableness of the Settlement Agreements*

In approving a settlement, the trial court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record." Cotton, 559 F.2d at 1330. "A mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law will not suffice." Id. (internal quotation marks omitted). We "must have a basis for judging the exercise of the district judge's discretion." Holmes, 706 F.2d at 1147 (quoting Cotton, 559

F.2d at 1330) (reversing and remanding where the district court approved a settlement based upon a deficient record).  However, as the former Fifth Circuit explained, "[d]ifferent problems are posed by class action settlements [than district court judgments].  Lacking a fully developed evidentiary record, both the trial court and the appellate court would be incapable of making the independent assessment of the facts and law required in the adjudicatory context." Pettway, 576 F.2d at 1169.  We explained in Cotton that:

> [i]n determining the fairness, adequacy and reasonableness of the proposed compromise, the inquiry should focus upon the terms of the settlement. The settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case . . . Yet, in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case in the settlement hearings.

Cotton, 559 F.2d at 1330. Therefore, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." Id.

In evaluating whether the settlement agreements in this case were "fair, adequate, and reasonable," the district court considered nine factors, which included the six factors enumerated in the standard asserted by Munchus and Strain and generally considered in evaluating settlement proposals.  Therefore, the district

11

court did not apply an incorrect legal standard, nor did it abuse its discretion in finding that the settlement agreements were fair, adequate, and reasonable.

<u>Fordice: The Vestiges of De Jure Segregation</u>

Munchus and Strain argue on appeal that the district court abused its discretion in finding that the vestiges of <u>de jure</u> segregation had been removed from the Alabama university system to the extent practicable and consistent with sound educational practices. They assert that the traditionally white universities in Alabama have not met the standards set forth by the Supreme Court in <u>United States v. Fordice</u>. They further assert that the district court's determination that Alabama's university system had attained unitary status was unsupported by the evidence at the fairness hearing and that the record did not show that the vestiges of racial segregation had been eliminated. They contend that the remaining vestiges of <u>de jure</u> segregation cannot be remedied through diversity programs, as outlined in the settlement agreements. Munchus and Strain further contend that immeasurable "diversity" is an erroneous legal standard in desegregation cases, and therefore, by applying a diversity standard, the district court abused its discretion. They note that "[a]ll agreed that the vestiges of racial segregation continue" and that, even with monitoring and court oversight, Alabama's university system failed to comply with the consent decree.

12

"A State does not discharge its constitutional obligations [to dismantle its prior dual university system] until it eradicates policies and practices traceable to its prior de jure dual system that continue to foster segregation." Fordice, 505 U.S. at 728, 112 S.Ct. at 2735. "If policies traceable to the de jure system are still in force and have discriminatory effects, those policies too must be reformed to the extent practicable and consistent with sound educational practices." Id. at 729, 112 S.Ct. at 2736.

A district court "should retain jurisdiction until it is clear that state-imposed segregation has been completely removed." Green v. County Sch. Bd. Of New Kent County, Va., 391 U.S. 430, 439, 88 S.Ct. 1689, 1695 (1968). However,

> The Supreme Court intended [the] federal supervision of local school systems to be a temporary measure. Since the legal justification for such supervision is a constitutional violation by local authorities, a district court must divest itself of jurisdiction when the constitutional violation has ceased and when local authorities have operated in compliance with a desegregation decree for a reasonable period of time.

Lockett v. Bd. of Educ. of Muscogee County Sch. Dist., Ga., 11 F.3d 839, 842 (11th Cir. 1997) (citing Board of Educ. of Oklahoma City v. Dowell, 498 U.S. 237, 247, 111 S.Ct. 630, 637, 112 L.Ed.2d 715 (1991)). "To be entitled to the end of federal court supervision, a formerly dual school system must be able to prove that it has (1) complied in good faith with the desegregation decree, and (2) eliminated

13

the vestiges of prior de jure segregation to the extent practicable." NAACP, Jacksonville Branch v. Duval County School, 273 F.3d 960, 966 (11th Cir. 2001) (citing Missouri v. Jenkins, 515 U.S. 70, 88, 115 S.Ct. 2038, 132 L.Ed.2d 63 (1995)).

We have "stress[ed] the temporary nature of federal judicial supervision over local school systems." Lee v. Talladega County Bd. of Educ., 963 F.2d 1426, 1430 (11th Cir. 1992). The Supreme Court noted in Freeman that:

> Returning schools to the control of local authorities at the earliest practicable date is essential to restore their true accountability in our governmental system. When the school district and all state entities participating with it in operating the schools make decisions in the absence of judicial supervision, they can be held accountable to the citizenry, to the political process, and to the courts in the ordinary course.

Id. "[T]he 'end purpose' of every court that supervises the disestablishment of a racially dual school system must be to remedy the [constitutional] violation and in addition to restore state and local authorities to the control of a school system that is operating in compliance with the Constitution." Id. (internal quotation marks omitted).

To the extent that Munchus and Strain argue that the district court applied the incorrect legal standard under Fordice, the district court did not err. It identified and applied the standard under Fordice. To the extent Munchus and Strain argue

14

that the district court abused its discretion in finding that the vestiges of segregation had been eliminated to the extent practicable and consistent with sound educational practices, the district court did not clearly err.  The district court was within its discretion to determine, based upon the evidence documented in progress reports and prior opinions, that it had exhausted its role and efficacy in continuing to desegregate Alabama's higher education system.  The district court had a record consisting of reports of a special master, an oversight committee, and the defendants that spanned the life of the consent decrees, upon which to base its finding. Additionally, the settlement agreement between the class plaintiffs and Alabama provides increased academic grant funding, continued funding for programs required by the remedial decrees, and capital funding, and it provides for court enforcement of the agreement.  To the extent that Munchus and Strain argue that diversity is immeasurable—or that desegregation is immeasurable through the implementation of diversity initiatives—the record of desegregation in this case demonstrates otherwise.

Accordingly, we affirm.

**AFFIRMED.**[1]

---

[1] Appellants' request for oral argument is denied.

15