UNITED STATES of America, Plaintiff

v.

CITY OF NEW ORLEANS, Defendant.

Civil Action No. 12–1924.

United States District Court,
E.D. Louisiana.

Signed Jan. 11, 2013.

Emily Anna Gunston, Christy E. Lopez, Corey M. Sanders, Jonathan M. Smith, Jude Volek, Roy L. Austin, Jr., Thomas E. Perez, U.S. Department of Justice, Washington, DC, Kenneth A. Polite, U.S. Attorney's Office, New Orleans, LA, Stephen C. Parker, U.S. Attorney's Office, Memphis, TN, for Plaintiff.

Sharonda R. Williams, Christy C. Harowski, Churita H. Hansell, Mary Katherine Kaufman, City Attorney's Office, Brian J. Capitelli, Ralph Capitelli, Capitelli & Wicker, Byron R. Arthur, Arthur Law Firm, LLC, New Orleans, LA, for Defendant..

## ORDER AND REASONS

SUSIE MORGAN, District Judge.

Before the Court are the Joint Motions for Entry of Decree filed by the United States of America ("United States") and the City of New Orleans, Louisiana (the "City") (collectively, the "Parties").[1] For the following reasons, the motions are **GRANTED** and the Parties' proposed Consent Decree filed by the Parties on July 24, 2012,[2] is **APPROVED AS AMENDED** by changes shown on the Parties' Errata Sheet filed on September

---

1. R. Docs. 2 (filed July 24, 2012) and 114 (filed September 14, 2012).

2. R. Doc. 2–1.

14, 2012.[3] Copies of the approved Consent Decree and Errata Sheet are attached to this order.

### Background

The United States filed the complaint in this matter against the City, after an extensive investigation of the New Orleans Police Department ("NOPD"),[4] pursuant to the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141 ("Section 14141"); the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d (the "Safe Streets Act"); and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d to 2000d–7, and its implementing regulations, 28 C.F.R. §§ 42.101–.112 ("Title VI"). The United States seeks to remedy an alleged pattern or practice of conduct by the NOPD that subjects individuals to excessive force in violation of the Fourth Amendment, unlawful searches and seizures in violation of the Fourth Amendment, and discriminatory policing practices in violation of the Fourteenth Amendment, the Safe Streets Act, and Title VI. The Parties' proposed Consent Decree contains detailed provisions concerning changes in NOPD policies and practices related to: (1) the use of force; (2) investigatory stops and detentions, searches, and arrests; (3) custodial interrogations; (4) photographic lineups; (5) bias-free policing; (6) community engagement; (7) recruitment; (8) training; (9) officer assistance and support; (10) performance evaluations and promotions; (11) supervision; (12) the secondary employment system, also known as the paid detail system; (13) misconduct complaint intake, investigation, and adjudi-cation; and (14) transparency and oversight. In addition, the proposed Consent Decree includes detailed provisions regarding the implementation and enforcement of the Consent Decree.

On July 31, 2012, this Court entered an order requiring any person wishing to seek intervention in this case under Rule 24 of the Federal Rules of Civil Procedure to file a contradictory motion to intervene no later than August 7, 2012, and any party opposing any such motion(s) to intervene to file an opposition to the motion(s) no later than August 14, 2012.[5]

Crescent City Lodge No. 2, Fraternal Order of Police, Inc., and Walter Powers, Jr. in his official capacity as Acting President of FOP ("FOP"); Walter Powers, Jr. in his individual capacity ("Powers"); Community United for Change ("CUC"); the Police Association of New Orleans and Michael Glasser in his official capacity as President of PANO ("PANO"); Michael Glasser in his individual capacity ("Glasser"); the Office of the Independent Police Monitor ("OIPM") and Susan Hutson in her official capacity as Independent Police Monitor for the City of New Orleans ("IPM"); and Susan Hutson in her individual capacity ("Hutson") (collectively, the "Proposed Intervenors"), filed motions to intervene.[6] The City and the United States opposed the motions to intervene.[7] The Court heard oral argument on all four motions on August 20, 2012.[8]

The Court found that the Proposed Intervenors could not intervene as of right in this matter, and declined to permit them to permissively intervene. Specifically, the

---

3. R. Doc. 114–2.

4. R. Doc. 1 at ¶¶ 14–16.

5. R. Doc. 7.

6. FOP and Powers filed their motion to intervene on August 6, 2012. See R. Doc. 9. CUC, PANO and Glasser, and OIPM, IPM and Hutson filed their motions to intervene on August 7, 2012. See R. Docs. 11, 13 and 15.

7. R. Docs. 26 and 27.

8. R. Doc. 37.

Court found that CUC, FOP and PANO did not have any legally protectable interests that would be impaired by the proposed Consent Decree, and thus that they were not entitled to intervene as of right.[9] The Court, in its discretion, did not permit them to permissively intervene because the Court determined that it had otherwise provided ample opportunity for the parties to assist the Court in its consideration of the proposed Consent Decree without prejudicing the Parties or delaying the proceedings. As for Powers and Glasser in their individual capacities, the Court found that they did not demonstrate any legally protectable interest separate from that of FOP and PANO and, for the same reasons, they could not intervene as of right or permissively. With respect to OIPM, the Court determined that the office lacked juridical capacity under Louisiana law and thus was legally incapable of intervening. Finally, because Hutson failed to provide the Court with any argument regarding her individual interest and how any such interest would be impaired as a result of the proposed Consent Decree, the Court determined that she could not intervene as of right or permissively. Accordingly, the Court denied the motions to intervene on August 31, 2012.[10] By the same order, the Court further provided that it would allow the Proposed Intervenors to present live testimony and documentary evidence at the Fairness Hearing and would permit the Proposed Intervenors to submit questions for the Court to ask the United States and the City.[11] In addition, the Court created a publicly-accessible website where all motions, pleadings, orders, public comments, the City's Request for Proposals to serve as Consent Decree Court Monitor ("RFP"), and copies of the proposed Consent Decree can be downloaded without charge and without the need to access the Eastern District of Louisiana's CM/ECF system.[12] The Court regularly updates the website to provide notice of activity in the case to the public.

The Court's July 31, 2012 Order also set the Parties' Joint Motions for Entry of Decree for hearing on August 29, 2012, at 10:00 a.m., in order to assist the Court in determining whether the proposed Consent Decree is "fair, adequate and reasonable" (the "Fairness Hearing").[13] The Court advised that any person wishing to comment upon the proposed Consent Decree would be permitted to do so by filing a written submission with the Court no later than August 24, 2012, at 4:30 p.m.[14] Public notice of the Court's order and the Fairness Hearing was published in *The*

---

**9.** With respect to FOP and PANO, organizations seeking to protect and represent the interests of NOPD officers, the Court underscored that "as it is currently written, the proposed Consent Decree in no way modifies the Civil Service system for NOPD officers." R. Doc. 102 at p. 18. Nevertheless, the Court provided that "[i]f changes are proposed to any NOPD policies that may conflict with the Civil Service rules and procedures, FOP and/or PANO may move to intervene for the limited purpose of assert their Civil Service property rights." *See* R. Doc. 102 at pp. 21–22.

**10.** R. Doc. 102.

**11.** R. Doc. 102 at p. 25.

**12.** *See* http://www.laed.uscourts.gov/Consent/consent.htm.

**13.** R. Doc. 7.

**14.** The Court later continued the Fairness Hearing until September 21, 2012, at 10:00 a.m., because Hurricane Isaac made landfall in Louisiana on August 28, 2012. *See* R. Docs. 54 and 109. The Court published notice that the Fairness Hearing had been rescheduled on the website for the U.S. District Court for the Eastern District of Louisiana.

*Times–Picayune.*[15]

On September 21, 2012, the Court conducted the Fairness Hearing.[16] The United States, the City and thet Proposed Intervenors presented six hours of live testimony and documentary evidence to the Court.[17] OIPM presented the live testimony of Hutson and Jasmine Groves, and OIPM's Exhibit 1 was admitted into evidence.[18] FOP presented the live testimony of Sergeant Christopher Landry and Dr. Bart Leger, and FOP's Exhibits 1 through 11 were admitted into evidence.[19] CUC presented the live testimony of W.C. Johnson, Malcolm Suber, Randolph J. Scott, Cynthia Parker and Terry Simpson, and CUC's Exhibits 1 through 8 were admitted into evidence.[20] Counsel for PANO made a presentation to the Court on the organization's behalf. The United States presented the live testimony of Santos Alvarado, Delmy Palencia, Alfred Marshall, Tania Tetlow, and Ira Thomas, and the United States' Exhibits 1 through 7 were admitted into evidence.[21] Finally, the City presented the live testimony of New Orleans Police Superintendent Ronal Serpas, and the City's Exhibits A, B, and C were admitted into evidence.[22] In addition, 158 comments from individuals and organizations were submitted for the Court's consideration.[23]

## Law and Analysis

■■■ Settlement is to be encouraged. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977). "Because of the consensual nature of [a consent decree], voluntary compliance is rendered more likely. . . . At the same time, the parties . . . minimize costly litigation and adverse publicity and avoid the collateral effects of adjudicated guilt." *United States v. City of Jackson, Miss.,* 519 F.2d 1147, 1152 n. 9 (5th Cir.1975). Indeed, "the value of voluntary compliance is doubly important when it is a public employer that acts, both because of the example its voluntary assumption of responsibility sets and because the remediation of governmental discrimination is of unique importance." *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 290, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986) (O'Connor, J., concurring). Nonetheless, "[a] consent decree, although founded on the agreement of the parties, is a judgment." *United States v. City of Miami,* 664 F.2d 435, 439 (5th Cir.1981) (citing *United States v. Kellum,* 523 F.2d 1284, 1287 (5th Cir.1975)). Thus, a court "must not merely sign on the line provided by the parties. Even though

---

15. R. Doc. 42.

16. *See supra* n. 11.

17. *See* R. Doc. 132 and its attachments. Emily A. Gunston, Christy E. Lopez, Corey M. Sanders, Stephen C. Parker, Jude Volek, Roy L. Austin, Jr., and James B. Letten appeared on behalf of the United States; Richard F. Cortizas, Brian J. Capitelli, Erica N. Beck, Ralph Capitelli, Sharonda R. Williams, and Churita H. Hansell appeared on behalf of the City; C. Theodore Alpaugh, III, and Claude A. Schlesinger appeared on behalf of FOP and Powers; Eric J. Hessler appeared on behalf of PANO and Glasser; William P. Quigley appeared on behalf of CUC; and John S. Williams appeared on behalf of OIPM and Hutson.

18. R. Docs. 132–1 to 132–2.

19. R. Docs. 132–3 to.132–16.

20. R. Docs. 132–17 to 132–24, and 132–37. Exhibits 3 and 6 were admitted into evidence with redactions agreed to by counsel for the City and CUC. Exhibit 8 was admitted as a proffer and ordered placed under seal. R. Doc. 132 at p. 2.

21. R. Docs. 132–25 to 132–32.

22. R. Docs. 132–33 to 132–36.

23. *See* R. Docs. 58 to 100, 105–106, 111–112, 141 and 145.

the decree is predicated on consent of the parties, the judge must not give it perfunctory approval." *Miami*, 664 F.2d at 440–441.

■ When presented with a proposed consent decree, a court must ascertain that the settlement is "fair, adequate and reasonable" and is not the product of "fraud, collusion, or the like." *Id.* at 441; *Cotton*, 559 F.2d at 1330. "The court must also consider the nature of the litigation and the purposes to be served by the decree. If the suit seeks to enforce a statute, the decree must be consistent with the public objectives sought to be attained by Congress." *Miami*, 664 F.2d at 441.

■ In order to determine whether the settlement between the United States and the City as set forth in the proposed Consent Decree is "fair, adequate and reasonable" and not the product of "fraud, collusion, or the like," the Court has solicited comments from the public and the Proposed Intervenors, and conducted an extensive Fairness Hearing in which the OIPM, CUC, FOP and PANO were allowed to participate. In addition, the Court also has carefully reviewed the 158 written public comments received.[24]

As the Court emphasized at the hearing on the motions to intervene, in the Court's order denying intervention, and at the Fairness Hearing, the Court has given the evidence presented at the Fairness Hearing, as well as the comments from the public and the Proposed Intervenors, serious consideration when determining whether the proposed Consent Decree is fair, adequate and reasonable. The Parties have represented to the Court that the concerns expressed will be given due consideration as policies and procedures are developed. Moreover, as the proposed Consent Decree is implemented, the continued involvement of the Court and the Consent Decree Court Monitor ("Monitor") will ensure that this is the case. Given that the Court must approve the City's contract with the Monitor, and the Monitor will report to the Court, the Monitor will be a crucial, independent entity aiding the Court in supervising the proposed Consent Decree's implementation.[25] In addition, reports from the City and the Monitor will be provided to the Court and to the public on a regular basis, ensuring a transparent and rigorous process.

Having considered the proposed Consent Decree, the comments received from the public and the Proposed Intervenors, the testimony and evidence presented at the September 21, 2012 Fairness Hearing, the Parties' representations, and the fact that the City has committed adequate funding to implement the proposed Consent Decree, the Court finds that the proposed Consent Decree, as amended, is fair, adequate and reasonable, and is not the product of fraud, collusion, or the like. As a result, the Court **APPROVES** the parties' proposed Consent Decree as amended as attached hereto.

The Court retains jurisdiction over this matter, including but not limited to the right to interpret, amend and enforce the Consent Decree and to appoint a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure, until the final remedy contemplated by the Consent Decree has been achieved. *See Chisom v.*

---

**24.** *See* R. Docs. 58 to 100, 105–106, 111–112, 141 and 145. The comments provided by CUC, PANO, FOP and OIPM are filed in the record at R. Docs. 66, 85, 86 and 141, and 92, respectively.

**25.** R. Doc. 110–1 at p. 5(RFP) and Consent Decree, attached to this order, at ¶ 444 et seq.

*Jindal,* 890 F.Supp.2d 696, 710–12 (E.D.La.2012).

Accordingly,

The Parties' Joint Motions for Entry of Decree are **GRANTED** and the Parties' proposed Consent Decree is **APPROVED AS AMENDED** by the changes shown on the Errata Sheet.

A separate judgment will be entered by the Court.

The City has informed the Court that it intends to file a motion seeking relief from the judgment entered in connection with this order under the Federal Rules of Civil Procedure. Such motion shall be filed in this action no later than **January 31, 2013, at 5:00 p.m.** Any response to the City's motion shall be filed no later than **February 15, 2013, at 5:00 p.m.** The City's arguments and any response thereto shall be considered by the Court when the Court deems the motion submitted.

## *ERRATA SHEET REGARDING PROPOSED CONSENT DECREE*

1. Caption changed to reflect case number and section assignment.

2. ¶ 4: commas added before and after the phrase "and the claims arose in."

3. ¶ 10: The following sentence was added at the end of the paragraph: "The assertion of such privilege would be decided by the court with jurisdiction over the action, motion, subpoena, or request for disclosure."

4. ¶ 14.a): "a" added before "knife or stick."

5. ¶ 14.h): hanging hyphen in "well-documented" moved to next line.

6. ¶ 14.r): "firearms" changed to "firearm."

7. ¶ 14.vvv) (formally uuu): numbering fixed.

8. ¶ 17: "policy" and "procedure" each made plural.

9. ¶ 21: "s" added to two instances of "object."

10. ¶ 21: "Stop" changed to "Stops" and "Arrest" changed to "Arrests."

11. ¶ 22: numbering format changed to be consistent with rest of Consent Decree.

12. ¶ 25: "s" added to "report" to agree with subject.

13. ¶ 28: comma added after "overarching."

14. ¶ 31: "pursuit" changed to "pursuits."

15. ¶ 40: added "or entering a confined space, such as a crawl-space."

16. ¶ 43: added "except where the suspect is hiding in a confined space (e.g. a crawl space) and refuses to surrender." Restructured paragraph to make clearer.

17.    § III introductory paragraph: "effect" changed to "affect."

18.    ¶ 59: comma removed after "subject."

19.    ¶ 65.c): additional space added after colon.

20.    ¶ 65.c): "a member" changed to "members."

21.    ¶ 70: "SOD's" changed to "the Special Operations Division's."

22.    ¶ 72: hanging hyphen in "after-action" moved to next line.

23.    ¶ 76: comma removed after "uniform."

24.    ¶ 82: hanging hyphen in "force-related" moved to next line.

25.    ¶ 86.e): extra space removed after "statement."

26.    ¶ 97: comma added after "as necessary."

27.    ¶ 101: "any" added after "and."

28.    ¶ 101: commas changed to semicolons.

29.    ¶ 107.d): extra space before "including" removed.

30.    ¶ 108.d): extra space before "If" removed.

31.    ¶¶ 113.f)(2) and (5): font of apostrophes changed.

32.    ¶ 115: "of the Effective Date" added after "Within three years."

33.    ¶ 117: hanging hyphen in "lecture-based" moved to next line.

34.    ¶ 118: hanging hyphen in "in-service" moved to next line.

35.    ¶ 119: extra space removed between "to" and "offer."

36.    ¶ 125: "or gender identity" added after "sexual orientation" to mirror language used in ¶ 127.

37.    ¶ 132: comma added after "privacy."

38.    ¶ 149.f): "the apparent" added before "race" to make consistent with preceding clause.

39.    ¶ 151: hanging hyphen in "non-disciplinary" moved to next line.

40.    ¶ 154: hyphen added to "personally identifying."

41.    ¶ 162.b): "and" removed after semicolon.

42.    ¶ 162.e): semicolon moved inside quotation marks.

43.    ¶ 164: hanging hyphen in "pre-interview" moved to next line.

44.    ¶ 177: hanging hyphen in "non-enforcement" moved to next line.

45.    ¶ 181: numbering format changed to be consistent with rest of Consent Decree.

46.  ¶ 187:  extra space removed before "Where."

47.  ¶ 189.f): "Communication" changed to "Communications."

48.  ¶ 191:  extra space removed between "and" and "this."

49.  ¶ 191.e):  modified so that it is two separate paragraphs. "Basic command of Spanish or Vietnamese, for officers assigned to Districts with significant LEP populations" now in ¶ 191.f).

50.  ¶ 201.a):  period changed to semicolon.

51.  ¶ 206: "ISB" changed to "Investigative Services Bureau."

52.  ¶ 208:  hanging hyphen in "drug-facilitated" moved to next line.

53.  ¶ 212:  comma added after "policies and procedures."

54.  ¶ 214: "has" changed to "have."

55.  ¶ 217: "of" changed to "or."

56.  ¶ 220: "4"changed to "four."

57.  ¶ 228:  semicolon changed to comma and "and" added between "developing community partnerships" and "participating in public meetings."

58.  ¶ 224:  extra space removed between "adequate" and "number."

59.  ¶ 226: "8" changed to "eight."

60.  ¶ 233: "publically" changed to "publicly."

61.  ¶ 241:  extra space removed after "Civil Service."

62.  ¶ 242:  hanging hyphen in "non-discriminatory" moved to next line.

63.  ¶ 245: "the" added before "recruit training academy" and "and" removed before "all in-service training."

64.  ¶ 247:  hanging hyphen in "Department-Wide" moved to next line and capital "W" in "Department-Wide" changed to lowercase.

65.  ¶ 248:  extra space before "two" removed.

66.  ¶ 248: "and" added before "a representative from the FBI, the District Attorney's office, the USAO, and the City Attorney's Office."

67.  ¶ 251:  comma added after "federal law."

68.  ¶ 254: "XIX.E." changed to "XII.E."

69.  ¶ 255:  hanging hyphen in "in-service" moved to next line.

70. ¶ 257: extra space before "Within" removed and commas added before and after "and incorporate the requirements of."

71. ¶ 267: comma removed after "progression."

72. ¶ 268: hanging hyphen in "de-escalation" moved to next line.

73. ¶ 275: hanging hyphen in "field-training" moved to next line.

74. ¶ 279: "dependant" changed to "dependent."

75. ¶ 282: "method" changed to "methods."

76. ¶ 283: extra parentheses removed.

77. ¶ 295: "twelve months" changed to "365 days"

78. ¶ 296.j): semicolon changed to period.

79. ¶ 300: extra space removed before "supervisor."

80. ¶ 302: "twelve  months" changed to "365 days"

81. ¶ 305: "for officers" added so that sentence reads: The City agrees to work with Civil Service to create opportunities for officers to be placed on the promotional list at least every two years.

82. ¶ 313: hanging hyphen in "non-disciplinary" moved to next line.

83. ¶ 314: extra space before "All" removed.

84. ¶ 319.f): comma removed after "records."

85. ¶ 320: extra space removed before "or similar charges."

86. ¶ 328g: "consistent with NOPD's state-approved document retention schedule" added to clarify that provision is consistent with Louisiana law.

87. ¶ 333: "and" added before "shall remain independent from actual or perceived influence by NOPD."

88. ¶ 358: period removed after "FTO."

89. ¶ 363.e): comma removed after "employer."

90. ¶ 364: hyphen added to "seven day."

91. ¶ 365: hyphen added to "24 hour."

92. ¶ 367: extra space removed after "Registration."

93. ¶ 367.a): "a" removed before "secondary employment."

94. ¶ 376: extra space removed before "infraction."

95.    ¶ 381: extra spaces removed before "Officers."

96.    ¶ 383: extra spaces removed after "365" and between "NOPD" and "agrees."

97.    ¶ 383: semicolon added between "failure to take a complaint" and "failure to report misconduct or complaints."

98.    ¶ 411: comma removed after "officer."

99.    ¶ 414: extra space removed after "resolve."

100.    ¶ 420: "ten" changed to "10."

101.    ¶ 421: comma removed after "consistent."

102.    ¶ 426: In last sentence of paragraph, "shall" changed to "should."

103.    § XVIII. Introductory Paragraph: comma removed after "trends."

104.    ¶ 433: "toward" added between "progress" and "meeting."

105.    ¶ 435: "and" added before "business and religious groups."

106.    ¶ 437.a): extra space removed before "community."

107.    § XVIII.E: extra space removed before "Community."

108.    ¶ 443: "will" changed to "may."

109.    ¶ 445: comma added after "responsibilities."

110.    ¶ 448.a): "Force" changed to "force."

111.    ¶ 448.a)(4): "Force" changed to "force" and comma added after "policy."

112.    ¶ 448.b): "the" changed to "The."

113.    ¶ 448.b)(2): comma added after "i.e."

114.    ¶ 448.c)(1): extra space removed before "particular."

115.    ¶ 448.c)(2): "homicide" changed to "Homicide."

116.    ¶ 448.c)(3): hyphen added to "non LEP" and comma added after "NOPD."

117.    ¶ 450: changed "12 months" to "365 days"

118.    ¶ 451: period added after "constitutional policing" and extra space removed.

119.    ¶ 454: "may" changed to "shall" so that sentence reads: "The Monitor shall coordinate with the IPM in conducting these use of force and misconduct investigation reviews."

120.    ¶ 456: "and shall submit such stipulation to the Court for approval" added after "accordingly."

121. ¶ 459: "may" changed to "shall" so that sentence reads: "In conducting its assessments, reviews, and audits, and in developing its monitoring plan and review methodologies, the Monitor shall coordinate and confer with the IPM to avoid duplication of effort and expenses."

122. § XIX.J: "between" changed to "Between."

123. ¶ 460: comma added and "and" removed after "Superintendent."

124. ¶ 461: comma added after "reports."

125. ¶ 463: "Monitoring" changed to "Monitor."

126. ¶ 469: "and" removed before "the City's assessment of the status of its progress."

127. ¶ 469: "six months" changed to "180 days"

128. ¶ 470: extra space removed after "hearings."

129. ¶ 477: removed: "The Parties have agreed to use New Orleans' procurement process in selecting the Monitor," as the process has been revised consistent with the Court's instruction.